VANESSA L. QUINONES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Quinones v. Commissioner
Docket No. 35021-85.
United States Tax Court
T.C. Memo 1988-269; 1988 Tax Ct. Memo LEXIS 298; 55 T.C.M. (CCH) 1121; T.C.M. (RIA) 88269; June 22, 1988. Stanley P. Gimbel, for the petitioner. Kenneth A. Hochman, for the respondent. NIMS
MEMORANDUM OPINION NIMS, Chief Judge: This case was assigned to Special Trial Judge Helen A. Buckley pursuant to the provisions of section 7443A(b) of the Internal Revenue Code of 1986, [1] for the purpose of hearing, consideration and ruling on respondent's motion to vacate decision. After a review of the record, we agree with the adopt her opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE BUCKLEY, Special Trial Judge: *299 This case is before us on respondent's motion to vacate a stipulated decision entered by this Court on April 16, 1987. Respondent determined a deficiency [2] in petitioner's 1984 Federal income tax in the amount of $ 508,316, together with additions to tax as follows: Section
Amount
6651(a)(1)
$ 50,832
6653(a)(1)
25,416
6653(a)(2)
50 percent of the interest due
on $ 508,316
6654
$ 31,958
Petitioner timely filed her petitioner to this Court, respondent answered, and the case was set for trial in Miami, Florida, on April 20, 1987. Shortly prior to that date the parties agreed that a decision should be entered for the full amount of the tax and additions as set forth in the notice of deficiency. The stipulated decision was filed, and accordingly, no trial was held. Petitioner was represented throughout all proceedings in the Tax Court by her counsel, Stanley P. Gimbel. The stipulation in regard to the decision was executed by Mr. Gimbel on behalf of petitioner and *300 by David R. Smith, Assistant District Counsel, Miami, Florida. Respondent in his motion to vacate the stipulated decision, as well as in exhibits and transcripts of the two hearings on the motion, alleged certain facts, all of which (with one exception discussed later) we take to be true for purposes of this consideration. The notice of deficiency determined that petitioner had unreported income in the amount of $ 1,033,220, which consisted of adjustments to income for the value of marijuana and currency seized at petitioner's residence and currency and diamonds seized from petitioner's safety deposit box. In the early part of 1984 Federal agents together with Alachua County, Florida, law enforcement personnel were conducting an investigation into a marijuana distribution ring being operated between Florida and Wisconsin by Frank R. Guido, Jr., (hereafter Guido) a close friend of petitioner Vanessa Quinones. Federal agents conducted a raid on a residence at Riviera Beach, Florida, on July 26, 1984, which they had determined was a stash house for Guido. The residence was leased by petitioner. The agents seized 834 pounds of marijuana, $ 404,520 in currency, and a safe deposit *301 key. When they entered the safe deposit box shortly thereafter, they seized the contents consisting of $ 260,600 in cash and three diamonds valued at $ 10,500. The Internal Revenue Service determined these items to be income to petitioner and made a termination assessment. Petitioner's counsel, Mr. Gimbel, represented her administratively and protested to the Miami Appeals Office which found the termination assessment and amount to be reasonable. On June 14, 1985, the statutory notice of deficiency was issued by respondent. Guido was indicted on December 18, 1985, for violations of Titles 21 and 26 of the U.S. Code. Count XXXIX of the indictment alleged that Guido received taxable income in excess of $ 750,000 for 1984. On May 20, 1986, Guido pled guilty to violations of both Title 21 and Title 26, which plea included violation of Internal Revenue Code section 7201. At the time of his plea, Guido acknowledged before Judge Paul in the U.S. District Court for the Northern District of Florida that the marijuana and currency seized from petitioner's residence, as well as the currency and diamonds seized from petitioner's safety deposit box, were property *302 under his dominion and control. On the same date, Guido signed a forfeiture agreement with the Alachua County, Florida, Sheriff's Department regarding such property and acknowledging ownership of it. Respondent's counsel, Mr. Hochman, alleges that he personally did not know of these facts until well after thirty days after the entry of decision in this case. Respondent goes on to allege that petitioner was a fugitive from justice throughout the pendency of the case, and that her counsel, Mr. Gimbel, was counsel for Guido [3] during the period when Guido made the ownership acknowledgments of the property. Respondent's counsel, Mr. Hochman, further alleges that when the decision in the case was filed he had only a general familiarity with the underlying facts since it was settled by the Miami Appeals Office. He states respondent's counsel did not review nor did it possess the administrative file in the case. Respondent's argument is that petitioner is not the correct taxpayer and that justice requires that petitioner not be charged with income which in fact was never hers. We held a first *303 hearing on August 26, 1987, on respondent's motion in Washington, D.C. Mr. Gimbel, representing petitioner, opposed respondent's motion to vacate by written objections. He was not present at the hearing. Because of the unusual nature of this case, a role reversal in which respondent moved to vacate a stipulated decision for the full amount of his determined deficiency and petitioner's counsel objected thereto, we scheduled a second hearing in Miami on respondent's motion. Mr. Gimbel appeared. He specifically addressed concerns this Court had about possible conflicts of interest in his representation of petitioner and Guido. Mr. Gimbel stated at the hearing he did not know the present whereabouts of petitioner and that to his knowledge she was still a fugitive from justice. He stated that he was authorized by petitioner to file the petition on her behalf, that he represented her in regard to the termination assessment, and that petitioner knew he had also represented Guido in the past. Mr. Gimbel was certain petitioner was not a fugitive at the time of filing the petition. Mr. Gimbel did not state that he specifically discussed the signing of a settlement document with petitioner. *304 However, he did state, "I did not specifically discuss signing the decision document at that time, but it was discussed in the case." Further, Mr. Gimbel directly contradicted respondent's allegation that he represented Guido in the criminal matter, stating that he did not so represent him. Mr. Gimbel placed into evidence a letter dated February 25, 1987, addressed to Mr. Gimbel and signed by David R. Smith, Assistant District Counsel, and prepared by attorney Kenneth A. Hochman[4] of District Counsel's office in Miami, Florida, which stated as follows: Appeals Officer Joseph Rodriguez has informed this office that you represent petitioner Vanessa Quinones and one Frank Guido; that you are willing to concede the Quinones case in full provided this office requests that the District Director-Jacksonville not assert the adjustments in the Quinones statutory notice of deficiency in any notice of deficiency issued to Mr. Guido. This office finds your proposal of settlement acceptable and provided that you execute decision documents in the Quinones case conceding the deficiency and additions to tax as stated in the statutory notice of deficiency in full, we will contact the *305 appropriate personnel in the District Director's office and inform them that adjustments appearing in the Quinones statutory notice should not be included in any proposed or actual notice of deficiency to Mr. Guido. Please be advised, however, that this office will not require the District Director to waive such adjustments as to Mr. Guido unless and until a decision document reflecting a full concession of the Quinones case is filed with the Court and the Appeal period has expired. To the extent that any potential expiration of a statute of limitations is involved, we will advise the District Director to assert any adjustments (including adjustments found in the Quinones statutory notice) against Mr. Guido as they deem appropriate, provided such statute expiration is scheduled to precede the expiration of the appeals period following the filing of the decision document. This letter was sent well after Guido had apparently in open *306 court conceded ownership of the property, a fact known as of May 20, 1986, by respondent's special agents. It obviously was the basis upon which the parties arrived at their stipulated decision agreement which was filed as a decision of this Court and about which respondent now has second thoughts. We now consider whether respondent has, under these facts, stated sufficient reason for us, in our discretion, to vacate our decision. Our Rule 162 provides that a motion to vacate a decision shall be filed within 30 days after the decision has been entered, unless the Court shall otherwise permit. [5] We allowed respondent to file his motion on the 90th day from the entry of the decision. Thus, we are considering respondent's request to vacate a non-final decision of this Court. We have previously noted our reluctance to set aside a settlement stipulation absent excusable damaging reliance upon a false or untrue representation of a party. See, e.g., Saigh v. Commissioner,26 T.C. 171, 180 (1956). Respondent has not alleged false or untrue representations by petitioner. Rather, respondent alleges that when the stipulated decision was filed in April 1987, his attorney, *307 Kenneth Hochman, "had only a general familiarity with the underlying facts of this case, since the case was settled by the Miami Appeals Office." He goes on to allege that "Respondent's counsel did not review nor did it possess the administrative file in this case," and further that "Respondent's counsel, who was preparing another case for trial, had no reason to further examine the facts of this case." In essence, respondent is arguing that he did not pay sufficient attention to the case when he entered into the stipulation. Respondent has now obviously decided that a deficiency notice was sent to the wrong person, and that the income in question belonged to Guido, rather than to petitioner Vanessa Quinones. Respondent is, he complains, in a classic whipsaw situation. However, he was in that unenviable position long before he sent the deficiency notice to petitioner and before he entered into the stipulated decision with Vanessa Quinones. First, we note that the Appeals Division is a part of the Chief Counsel's Office, *308 and that even though they may have negotiated the stipulated decision with petitioner's counsel, Mr. Gimbel, the decision itself was executed on behalf of the Chief Counsel by David R. Smith, Assistant District Counsel, in Miami, Florida. Further, David R. Smith agreed to the proposed settlement with petitioner upon the expressed quid pro quo that "this office requests that the District Director-Jacksonville not assert the adjustments in the Quinones statutory notice of deficiency in any notice of deficiency issued to Mr. Guido" in a letter apparently written by attorney Kenneth Hochman for Mr. Smith's signature. Lastly, we note that Special Agent Al Weikel, at Guido's sentencing hearing on May 20, 1986, stated that the property seized at petitioner's house, including the safe deposit key, belonged to Guido. This matter does not appear to be a case of respondent's right hand not knowing what the left hand was doing. Rather, it appears to the Court that respondent had all necessary facts in hand and either simply failed to give those facts adequate consideration or has now changed his mind about the agreement into which he entered. This Court has in regard to respondent's motion *309 direct, and possibly conflicting, interests in seeking that the ends of justice are met and in seeing that there is finality in our decisions. Our decision, although not yet final, should have a presumption of correctness attached to it, absent extraordinary circumstances. Our standard regarding vacating consent judgments, as we recently enunciated in Stamm International Corp. v. Commissioner,90 T.C. 315 (1988), is that the parties are held to their agreement without regard to whether the judgment is correct on the merits. We note, however, that respondent does not argue to this Court that the judgment against Vanessa Quinones is incorrect. He does not offer to stipulate to a "no deficiency" decision. Rather, he in effect says only that he might have charged the wrong person with income and wants the opportunity to present alternative deficiency determinations. Further, we note respondent entered into the stipulated decision with full knowledge of the underlying facts. In what we assume to be an unusual document respondent agreed to the stipulated decision against petitioner for the full amount of the deficiency upon the stated quid pro quo of not asserting *310 the adjustments involved therein against Guido. This Court, in reliance upon the fact that the parties had reached an agreement, did not hear the case during the trial calendar for which it had been set. As we noted in Himmelwright v. Commissioner,T.C. Memo. 1988-114: This and other courts have held that the compromise and settlement of tax cases is governed by general principles of contract law. In Robins Tire and Rubber Co. v. Commissioner,52 T.C. 420, 435-436 (1969), we stated that "a compromise is a contract and thus is a proper subject of judicial interpretation as to its meaning, in the light of the language used and the circumstances surrounding its execution." See also Brink v. Commissioner,39 T.C. 602, 606 (1962), affd. 328 F.2d 622 (6th Cir. 1964); United States v. Lane,303 F.2d 1, 4 (5th Cir. 1962); Kehoe v. United States, an unpublished opinion ( S.D. N.Y. 1979, 44 AFTR 2d 79-5549, 79-5550, 79-2 USTC par. 9524 at 87,870). * * * [6]
The parties have placed their settlement agreement in *311 writing. We are not willing to infer, as respondent apparently wishes us to do, that Mr. Gimbel operated outside the scope of his authority from petitioner. We do not make such determinations based upon hunches or, indeed, based upon our uneasiness about the agreement reached on petitioner's behalf. Rather, we believe the parties, for whatever their reasons, knowingly entered into this agreement. Having done so, we believe the decision should be at rest. We also find instructive the language of the Supreme Court in United States v. Armour & Co.,402 U.S. 673, 681-682 (1971): Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation. Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation. Thus the decree itself cannot be said to have a purpose; rather the parties have purposes, *312 generally opposed to each other, and the resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. * * * [Fn. ref. omitted.] Respondent has failed to set forth any extraordinary reason which would cause us, in our discretion, to vacate the stipulated decision into which he entered. For the reasons stated herein, respondent's motion to vacate will be denied. An appropriate order will be issued.
Footnotes
1. Hereinafter, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue, unless otherwise indicated. Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The deficiency notice was dated June 14, 1985. Prior thereto on November 19, 1984, respondent made a termination assessment against petitioner in the amount of $ 505,066. ↩
3. Mr. Gimbel has denied that he represented Mr. Guido in the criminal proceedings. ↩
4. Mr. Hochman, in his original argument in the District of Columbia on respondent's motion to vacate, failed to advise the Court of the existence of his letter, either by oral argument or in his memorandum in support of the motion.↩
5. We granted respondent leave to file his motion to vacate. Petitioner has filed a motion objecting to our granting such leave, and her motion is denied. ↩
6. See also Ball v. Commissioner,T.C. Memo. 1984-218↩.