ROBERT F. AND FRANCES H. HAIDUK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Haiduk v. Commissioner
Docket No. 36632-87
United States Tax Court
T.C. Memo 1990-506; 1990 Tax Ct. Memo LEXIS 559; 60 T.C.M. (CCH) 864; T.C.M. (RIA) 90506; September 24, 1990, Filed Daniel J. Cooper, for the petitioners. Stephen Ianello, for the respondent. COUVILLION, Special Trial Judge. COUVILLION
MEMORANDUM OPINION This case was assigned pursuant to section 7443A(b)(3) [1] and Rule 180 et seq. At issue is a motion by petitioners for entry of decision as to which respondent has filed a notice of objection. At the time the petition was filed, petitioners were residents of El Toro, California. Respondent determined a deficiency in Federal income tax, for petitioners' *561 1983 tax year, of $ 6,119; additions to tax under section 6653(a)(1) and (2), respectively, of $ 305.95 and 50 percent of the interest due on $ 6,119; the addition to tax under section 6659 in the amount of $ 1,835.70; and additional interest under section 6621(c). Petitioners were investors in a program known as "Philatelic Leasing" (Philatelic) which has been identified by respondent as a national litigation project. In general, participants in Philatelic paid cash and executed promissory notes in consideration for which they received rights to the exploitation of a stamp master. All of the deductions and credits claimed by participants in the program were disallowed by respondent. Respondent, by letter, extended an offer to petitioners for settlement of this case. Essentially, the offer allowed investors a deduction of 50 percent of their cash investment in the year at issue. In the letter, respondent represented that petitioners could accept the offer, within 14 days, by (1) returning a checklist properly marked to indicate acceptance of the settlement offer; and (2) establishing proof of their cash investment in the Philatelic program. Petitioners timely complied with *562 both requirements. Respondent now refuses to proceed with the settlement for the reason that the offer, as respondent envisioned it, contemplated that taxpayers would not enjoy any tax benefits from Philatelic for other years and, since petitioners realized tax benefits from Philatelic for four years not before the Court, the settlement is not binding upon respondent. Petitioners entered the Philatelic program in 1982. On their 1982 return, they claimed certain deductions and the investment credit relating to the stamp master. Because petitioners could not utilize the entire investment credit against their 1982 taxes, they carried back the credit to 1979, 1980, and 1981. These three years apparently utilized the credit in full. On their 1983 return (which is the only year at issue in this case), petitioners claimed certain expenses relating to Philatelic which respondent disallowed in the notice of deficiency. The claimed expenses related to cash payments totaling $ 17,527.37 petitioners made in 1983. Respondent's objection to settlement of the 1983 tax year is based upon the disposition which came about as to petitioners' four earlier years, 1979, 1980, 1981, and 1982. A *563 separate notice of deficiency had been issued with respect to these four years, disallowing the expenses and investment credit arising out of Philatelic, and petitioners filed a petition with this Court at docket No. 26658-88. That case was settled by the parties through a stipulated decision which decreed no deficiencies in income taxes and no additions to tax. The case was settled because of respondent's concession that the four years were barred by the statute of limitations. It appears that, while the 1982 tax year was under audit, petitioners and respondent had jointly agreed to an open-ended consent to extend the period of limitations through execution of a Form 872-A. In accordance with the provisions of Form 872-A, petitioners later executed and delivered to respondent a Form 872-T, which terminated the extension of the period of limitations. Under the Form 872-A, respondent was allowed 90 days to issue the notice of deficiency once respondent received a Form 872-T. Respondent failed to issue the notice of deficiency within this time period; the defense was properly raised by petitioners and resulted in the stipulated decision referred to. In the decision in docket No. *564 26658-88, petitioners were awarded litigation costs in the amount of $ 2,856.76 pursuant to section 7430. Because petitioners enjoyed the tax benefits for these earlier years from Philatelic, respondent contends he should be allowed to "back out" of the accepted settlement offer for this case involving the 1983 tax year. Respondent argues that no binding settlement agreement has ever been entered into by the parties since the offer and the purported acceptance were evidenced only by letters between the parties. Alternatively, respondent argues that, even if an agreement was entered into, the agreement should not be enforced. Respondent first takes the position that the letters between the parties, without additional documentation, are insufficient to constitute an enforceable settlement agreement because there are no documents memorializing the agreement other than a "form" letter from respondent and a letter from petitioners' counsel accepting the offer contained in respondent's letter. Respondent contends that, in the absence of a stipulation of settled issues, filed decision documents, or administrative forms such as a closing agreement under section 7121, there is no binding *565 settlement. Formal stipulations of settlement or decision documents are not absolute prerequisites to a binding agreement to settle pending litigation if the intent of the parties to settle and the terms of the settlement are otherwise ascertainable. Further, respondent's contention that a closing agreement under section 7121 is necessary to settle a case pending in this Court is simply not correct. The regulations under section 7121 provide a procedure whereby taxpayers may, at the Commissioner's option, administratively settle their tax liabilities with finality by entering into closing agreements, but exclusive use of such agreements to settle cases docketed in this Court is clearly not contemplated by the regulations: A request for a closing agreement which relates to a prior taxable period may be submitted at any time before a case with respect to the tax liability involved is docketed in the Tax Court of the United States * * * [Emphasis added.] Section 301.7121-1(d)(1), Proced. & Admin. Regs.
An agreement to settle a lawsuit, voluntarily entered into, is binding upon the parties, whether or not made in the presence of the court and even in the absence of a writing. *566 . The compromise and settlement of tax cases is governed by general principles of contract law. ; .
Settlement offers made and accepted by letters have been enforced as binding agreements by this Court. See , where a settlement offer made by letter from the Commissioner's Appeals Officer and accepted by a letter from taxpayers' counsel was enforced over the taxpayers' objection; , where a settlement agreement of the parties, memorialized in a letter to the Commissioner from the taxpayer's counsel, was enforced upon the Commissioner's motion. It is undisputed that an offer to settle this case was made by respondent, and petitioners, through counsel, timely notified respondent of their acceptance of the settlement offer. Respondent does not contend that the settlement offer was unauthorized, that petitioners failed to properly *567 accept the offer, or that petitioners failed to establish their cash investment in Philatelic. Therefore, under general principles of contract law, petitioners established the basic elements of an enforceable contract: a valid offer and acceptance. The Court finds that the parties entered into an agreement to settle the case, the terms of which were set forth in respondent's letter to petitioners' counsel. Respondent's next position, that the agreement entered into by the parties should not be enforced, incorporates two contentions: (1) That the settlement agreement is unenforceable under its own terms because disallowance of the deductions and credits for petitioners' four earlier years was barred, and/or (2) that petitioners already received the benefit of the settlement agreement by virtue of having been allowed the tax benefits of Philatelic for the four earlier years. With respect to the first contention, respondent argues that, since no deductions or credits attributable to Philatelic were eliminated and no additions to tax were imposed for the four earlier years, no further deductions from Philatelic are allowable in taxable year 1983 "under the terms of the settlement *568 agreement." Respondent points to nothing in the settlement agreement to buttress this contention, offering instead an unsupported allegation that the settlement offer was based upon "the assumption that all petitioners had not received any benefit from their actual cash investment." This assumption is not evident from the terms of the settlement offer made by respondent. Respondent's offer provided: 1. Taxpayer would be allowed an ordinary deduction equal to 50% of his cash investment, if proof of payment is provided. 2. No investment tax credits would be allowed in any year. 3. Penalties under section 6653(a) would be evaluated on an individual basis and would be conceded by the government, if the taxpayer could demonstrate a reasonable basis for entering into this leasing activity. 4. Section 6659 would apply in full (30%) only to the portion of the deficiencies resulting from depreciation deductions and investment tax credits, since those items are directly attributable to valuation overstatements of the stamp masters. Section 6659 would not be applied to any other portion of the deficiencies in issue. 5. Section 6621(c) increased rate of interest *569 would apply to the entire deficiencies. 6. Section 6661 would not apply to any year. 7. In addition, your clients would be required to enter into a closing agreement for subsequent years which is consistent with the above modified settlement. Under the modified offer, section 6659 would be applied to those portions of the deficiencies which result from investment tax credit or depreciation. Thus, section 6659 would apply to all carryback years and would apply only to that portion of 1982 and 1983 deficiencies resulting from investment tax credits or depreciating deductions.
At the outset, respondent's offer specifically references the instant case by its Tax Court docket number. The only taxable year at issue in the instant case is 1983. Therefore, the only other years (other than 1983) which were made part of respondent's offer were "subsequent" years, referred to in paragraph 7 above. This meant only years subsequent to 1983 and clearly could not mean years prior to 1983. If respondent had intended that the settlement was conditioned upon disallowance of tax benefits for prior years, a provision to that effect could have easily been included in the settlement *570 offer. However, no such provision was included by respondent, and the Court will not rewrite the parties' agreement to include one. Although not clearly articulated, respondent also appears to argue that the settlement agreement is unenforceable because the offer was predicated upon a mistaken belief that prior years would be open to disallowance of deductions and credits when the agreement was implemented. If that is the case, it would appear that respondent would not have extended the offer if respondent realized that adjustments in the prior years were barred. However, any misapprehension about the status of the periods of limitation for the four earlier years appears to have been a unilateral mistake on respondent's part and, therefore, does not, without additional evidence, offer sufficient grounds for setting aside the settlement agreement. Respondent does not suggest any misrepresentation by petitioners or their counsel and offers no argument or authorities to support a finding that the settlement agreement is avoidable on the basis of mutual mistake, or that enforcement of the agreement will result in manifest injustice. In , *571 the Court held that a unilateral error by respondent's counsel in calculating the amount of taxes that would be owed under a settlement agreement, in the absence of misrepresentation by the adverse party, was not a sufficient ground to vacate the agreement. Similarly, the Court refused to set aside the parties' settlement agreement on the basis of the unilateral mistake of the taxpayers in , affd. . Finally, respondent contends that, because petitioners realized tax benefits for the four earlier years, these benefits should be held to offset the concessions by respondent in the agreement to settle the case for 1983. Respondent offers no argument or authority in support of this contention, and it is not evident to the Court that the terms of the settlement agreement justify the interpretation respondent urges. The Court finds that insufficient reason exists to set aside the settlement agreement of the parties. Respondent is bound by the settlement offer extended to and accepted by petitioners as to their 1983 tax year. Accordingly, petitioners' motion for entry of decision will *572 be granted. An appropriate order will be issued. [2]
Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in question unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The Court is unable to enter a decision because the agreement fails to compute the deficiency or additions to tax. Additionally, the agreement, as framed, does not resolve the addition to tax under section 6653(a), since resolution of that issue is based upon petitioners' demonstrating "a reasonable basis for entering into this leasing activity." The order will allow the parties the opportunity to resolve such factual matters and, if the parties are unable to resolve such matters, they will so report to the Court, and litigation of this case will be limited to those factual matters within the framework of the agreement of the parties.↩