United States Court of Appeals,

Fifth Circuit.

No. 91–4631.

TREATY PINES INVESTMENTS PARTNERSHIP, William F. Wallace, a Partner other than the Tax Matters Partner, Petitioner,

James A. Garrity and Andrea S. Garrity, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Aug. 5, 1992.

Appeal from a Decision of the United States Tax Court.

Before SNEED[*]*, REAVLEY, and BASDALE, Circuit Judges.

SNEED, Circuit Judge:

James A. Garrity and Andrea S. Garrity ("the Garritys"), as notice partners in Treaty Pines Investments Partnership ("Treaty Pines"), were involved in an adjustment proceeding before the U.S. Tax Court.  The Garritys appeal the Tax Court's denial of their motions to determine status as a party and to vacate a decision which purported to fix their liability as partners of Treaty Pines.  They maintain that because they reached a settlement with the IRS in 1988, the Tax Court lacked subject matter jurisdiction as to their partnership items.  We agree, and reverse and remand with instructions to dismiss.

I.

FACTS AND PROCEEDINGS BELOW

Sometime prior to March 13, 1987, the IRS conducted audits of a large number of partnerships that had been involved with the Hillcrest Government Securities trading programs[1] and

---

[*]Senior Circuit Judge of the Ninth Circuit, sitting by designation.

[1]The Hillcrest Government Securities trading programs were tax shelters promulgated by Hillcrest Securities Corp., a subsidiary of the Dallas-based Hillcrest Equities, in the early 1980s. The programs involved sham transactions in government securities, with the aim of generating fictitious tax losses with no genuine risk to investors.  From 1981 through 1984, limited

related entities for the years 1981 through 1984. Treaty Pines was among the audited partnerships.

On March 13, 1987, the IRS mailed to the Tax Matters Partner[2] and to all notice partners[3] of Treaty

Pines a Notice of Final Partnership Administrative Adjustment (FPAA) for the 1983 tax year. *See*

I.R.C. § 6223(a)(2). On August 10, 1987, William F. Wallace, a Treaty Pines partner other than the

_____

partnerships across the country were formed to take advantage of the Hillcrest programs. Ultimately their investments led to some 800 tax cases, including the instant case. No one really knows how many taxpayers were affected by all the Hillcrest cases, although some estimates place the figure as high as 7000. The vast majority of the cases have been settled.

[2]I.R.C. § 6231(a)(7) defines "tax matters partner" as follows:

> The tax matters partner of any partnership is—
>
>> (A) the general partner designated as the tax matters partner as provided in regulations, or
>>
>> (B) if there is no general partner who has been so designated, the general partner having the largest profits interest in the partnership at the close of the taxable year involved (or, where there is more than 1 such partner, the 1 of such partners whose name would appear first in an alphabetical listing).
>
> If there is no general partner designated under subparagraph (A) and the Secretary determines that it is impracticable to apply subparagraph (B), the partner selected by the Secretary shall be treated as the tax matters partner.

Under the Internal Revenue Code, a Tax Matters Partner has certain authority to act on behalf of the partnership in its dealings with the IRS. For example, the Tax Matters Partner may bind certain other partners to abide by settlement agreements entered into with respect to administrative proceedings relating to the determination of partnership items at the partnership level. *Id.* § 6224(c)(3).

[3]I.R.C. § 6231(a)(8) defines "notice partner" as "a partner who, at the time in question, would be entitled to notice under subsection (a) of section 6223 (determined without regard to [certain special rules for partnerships with more than 100 partners] )." I.R.C. § 6223(a), in turn, provides:

> The secretary shall mail to each partner whose name and address is furnished to the Secretary notice of—
>
>> (1) the beginning of an administrative proceeding at the partnership level with respect to a partnership item, and,
>>
>> (2) the final partnership administrative adjustment resulting from any such proceeding.
>
> A partner shall not be entitled to any notice under this subsection unless the Secretary has received (at least 30 days before it is mailed to the tax matters partner) sufficient information to enable the Secretary to determine that such partner is entitled to such notice and to provide such notice to such partner.

Tax Matters Partner, filed in Tax Court a petition on behalf of Treaty Pines seeking a readjustment of partnership items in the FPAA. *See id.* § 6226(b)(1). The case was consolidated with approximately 800 other cases relating to Hillcrest Securities.

Sometime thereafter, the IRS promulgated a proposed blanket settlement offer[4] to all partners involved in the Hillcrest cases. This offer expired February 29, 1988. According to the Commissioner, the terms of the offer required that a partner execute a Form 906 closing agreement[5] in order to effectuate a binding settlement agreement; however, as the Garritys point out, there is no evidence in the record to support this. The IRS promulgated its settlement offer to Treaty Pines by way of the Tax Matters Partner. The Garritys assert that as a consequence, they did not receive actual notice that they were required to complete a closing agreement form.

By letter dated February 29, 1988, the Garritys purportedly accepted the settlement offer. However, they never signed a closing agreement form. For its part, the IRS, although it belatedly

---

[4]I.R.C. § 6224(c) provides in part:

> (c) **Settlement agreement.**—In the absence of a showing of fraud, malfeasance, or misrepresentation of fact—
>
> > (1) **Binds all parties.**—A settlement agreement between the Secretary and 1 or more partners in a partnership with respect to the determination of partnership items for any partnership taxable year shall (except as otherwise provided in such agreement) be binding on all parties to such agreement with respect to the determination of partnership items for such partnership taxable year....
> >
> > (2) **Other partners have right to enter into consistent agreements.**—If the Secretary enters into a settlement agreement with any partner with respect to partnership items for any partnership taxable year, the Secretary shall offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement....

[5]I.R.C. § 7121 and regulations promulgated thereunder, 26 C.F.R. § 301.7121–1, provide that the Secretary may enter into a written agreement with the taxpayer as to liability, and that such agreement shall be conclusive as to the matters agreed upon except in cases of fraud, malfeasance, or misrepresentation of material fact. The regulations provide in particular that "[a]ll closing agreements shall be executed on forms prescribed by the Internal Revenue Service," 26 C.F.R. § 301.7121–1(d)(1).

acknowledged receipt of the acceptance, never filed in Tax Court any record of a settlement with the Garritys. *See* T.C.R. 248(c)(1). The Garritys now say that the 1988 settlement was nonetheless valid and binding on the parties. The IRS vigorously disputes this. The question of the validity of the 1988 settlement agreement is central to this case.

Over two years later, on May 22, 1990, the Tax Court conducted a pretrial hearing in the case initiated by Treaty Pines partner Wallace to determine its status and the advisability of dismissing for want of prosecution. At the hearing, the IRS withdrew its settlement offer as to all partners who had not already accepted it and who did not accept it on that date. Unlike a number of other Treaty Pines partners, the Garritys received no notice of this hearing. No Treaty Pines partners appeared at the hearing.

In October and November 1990, the Garritys and the IRS exchanged correspondence relating to a new settlement proposed by the IRS. By letter dated December 10, 1990, the Garritys informed the IRS that they were "not rejecting the settlement offer," but would take it "under advisement." The IRS replied by letter dated December 18, 1990, which letter said in pertinent part:

> Our records show that Mr. Garrity accepted the original settlement offer which expired as of February 29, 1989 [*sic*]. The Court issued orders to all partners who had not agreed with the respondent prior to the May pre-trial hearings in Dallas. Mr. Garrity was not among the names submitted to the Court as unagreed. We did not represent that Mr. Garrity had not agreed at the May pre-trial hearing. Accordingly, we believe that Mr. Garrity is entitled to the standard Hillcrest settlement offer without the 5% addition to tax under I.R.C. § 6653(a)(1) as was available up until February 29, 1988.

On January 18, 1991, the IRS filed a motion to dismiss Treaty Pines's petition for failure to prosecute. Notwithstanding the letter of December 18, 1990, the IRS, on January 23, 1991, wrote the Garritys to urge that they reply to the new settlement offer within 15 days "so that we can process your settlement with the tax court." The letter warned that if no response was received, the case would be "forwarded for trial preparations or default processing and the settlement offer withdrawn." The Garritys did not respond. On February 11, 1991, the Tax Court granted the IRS's motion to

dismiss for want of prosecution, and issued an Order of Dismissal and Decision that upheld the IRS's FPAA. *See* I.R.C. § 6226(h).

Meanwhile, on February 7, 1991, the Garritys mailed to the Tax Court a Motion to Determine Status as a Party, to determine whether they would be bound by the court's decision. This motion, however, was not file-stamped by the court until February 12, and the court did not immediately rule on the motion. In March 1991, the Garritys filed additional motions with the court, including an Amended Motion to Vacate Decision for lack of subject matter and personal jurisdiction.

On April 24, 1991, the Tax Court denied all the Garritys' pending motions. The court stated that the Garritys were attempting to raise the issue whether the IRS's assessment of tax was barred by the statute of limitations (which, according to the Garritys, commenced running on February 18, 1988), and held that it had no jurisdiction to determine this issue. *Id.* § 6226(f). The court further held that even if there were no jurisdictional impediment, it would not vacate its decision, because the Garritys offered no explanation for their failure to raise the issue earlier, and because to vacate the decision would delay the ultimate assessment of tax against other partners who had not settled. *See id.* § 6225(a).[6]

## II.

## STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291 and I.R.C. §§ 6226(g), 7482(a)(1). Jurisdictional questions are questions of law, reviewed de novo. *See, e.g., Windfield v. Groen Div., Dover Corp.,* 890 F.2d 764, 766 (5th Cir.1989); *Voluntary Purchasing Groups, Inc. v. Reilly,* 889 F.2d 1380, 1384–85 (5th Cir.1989).

---

[6]The IRS states that by letter dated June 25, 1991, the Garritys concluded a set of closing agreements that render this appeal moot. Inasmuch as the closing agreements are not part of the record, we decline to address this issue.

III.

DISCUSSION

A. *The Tax Court Erred By Failing to Consider the Validity of the 1988 Settlement Agreement.*

The Tax Court erred in holding that it lacked jurisdiction to rule on the validity of the 1988 settlement agreement. It failed to consider that the settlement, if valid, would convert the Garritys' partnership items to *nonpartnership* items, I.R.C. § 6231(b)(1)(C), and thus would eliminate the basis for the court's subject matter jurisdicti on with respect to these items. *Id.* § 6226(f). It follows, therefore, that the Tax Court could enforce its order of February 11, 1991 against the Garritys only if the 1988 settlement was invalid. Because a court is entitled to determine its own jurisdiction, *Familia De Boom v. Arosa Mercantil, S.A.,* 629 F.2d 1134, 1137 (5th Cir.1980), *cert. denied,* 451 U.S. 1008, 101 S.Ct. 2345, 68 L.Ed.2d 861 (1981), the Tax Court could, and was required to, determine the validity of the settlement. *See Triangle Investors Ltd. Partnership v. Commissioner,* 95 T.C. 610, 613–16 (1990) (Tax Court inquired into validity of notice of FPAA in order to determine whether invalid notice would serve as basis for dismissal for lack of jurisdiction).

The Tax Court avoided the issue of the validity of the 1988 settlement by construing the Garritys' motions as raising a statute of limitations argument. The court quite properly denied that it had jurisdiction under section 6226(f) to consider the timeliness of the assessment of the tax. However, the court misperceived the true issue the Garritys' motions sought to raise.

The Garritys' position was stated in the alternative. Either the 1988 settlement offer was accepted by the Garritys and thus binding on the Commissioner, or, if not accepted, the Garritys ought to be permitted to enter the proceedings, of which they had no notice, and which finally were dismissed for want of prosecution on February 11, 1991.

The court obviously was concerned that if the Garritys were right about the 1988 settlement, any tax liability might be barred by limitations, and if the proceedings were reopened, tax liabilities

of other partners also might be barred by limitations. The heart of this matter is whether the Garritys are to be permitted to litigate the question whether the 1988 settlement offer was accepted. The Tax Court attempted to deprive them of that opportunity by refusing to consider the issue on which depended its jurisdiction to inflict such deprivation. The jurisdictional challenge was properly before the court and should have been considered without regard to the Garritys' motivations for raising it and regardless of when the challenge was raised. *Brannon's of Shawnee, Inc. v. Commissioner,* 69 T.C. 999, 1000, 1004 (1978).

B. *The 1988 Settlement Agreement Was Valid and Binding on the Parties.*

To repeat, if the parties concluded a settlement, then that settlement eliminated the basis of the Tax Court's subject matter jurisdiction over the Garritys' partnership items, so that the court's February 11, 1991 affirmance of the Treaty Pines FPAA could have no effect on the Garritys.

The Commissioner denies that the parties ever concluded a settlement agreement. In particular, the Commissioner insists that the Garritys' "acceptance" of the settlement by their letter dated February 29, 1988 was invalid because the Garritys subsequently failed to complete a Form 906 closing agreement as specified in the settlement offer. The Commissioner also contends that its letter of December 18, 1990 merely acknowledged the Garritys' "acceptance" of the terms of the original settlement offer and indicated the willingness of the IRS to enter into a new settlement agreement under the same terms as the old one, but not to acknowledge the conclusion of a settlement agreement.

The Garritys maintain that a settlement agreement as to partnership items was concluded on February 29, 1988 and has remained in effect ever since. They correctly point out that general contract law principles govern tax case settlements. *Robbins Tire & Rubber Co. v. Commissioner,* 52 T.C. 420, 435–36 (1969); *Quinones v. Commissioner,* 55 T.C.M. (CCH) 1121 (1988). In particular, a tax settlement agreement is binding even if it consists only of letters of offer and

acceptance; no formal stipulation of settlement, filed decision document, or closing agreement is necessary. *Haiduk v. Commissioner,* 60 T.C.M. (CCH) 864, 865–66 (1990). Therefore, the Garritys argue, their letter of February 29, 1988 was sufficient to serve as an acceptance of the IRS's proposed settlement.

We agree. The Garritys' letter of February 29, 1988 was a valid and binding acceptance of the IRS's settlement offer, and this acceptance was not invalidated by the Garritys' subsequent failure to sign a Form 906 closing agreement. As the IRS conceded at oral argument, there is nothing in the record before us to indicate that signature of a Form 906 was a requirement of acceptance, nor anything to indicate that the Garritys were made aware of this supposed requirement. The record contains no copy of the settlement offer. Neither does it contain any postal receipts or other evidence to support the Commissioner's contention that the Garritys actually received the offer.[7] It may be that the Garritys learned of the offer from the Tax Matters Partner, and that they were familiar with the offer's substantive content but not its formal technicalities; we do not know. What is in the record before us is the Garritys' letter of February 29, 1988, purporting to accept the settlement offer, and the IRS's letter of December 18, 1991, purporting to confirm the existence of the settlement. On this basis we conclude that the parties agreed to a settlement in 1988. Our conclusion is reinforced by the Tax Court's failure to include the Garritys in the May 1990 hearing. The lateness of the Garritys' motions to determine status is consistent with our conclusion that a settlement had been reached.

The Garritys' December 10, 1990 letter, which stated that they would take the IRS's new settlement offer "under advisement," did not repudiate the 1988 settlement agreement. Indeed, their position that the original settlement was intact, taken in conjunction with the IRS's apparent confusion over whether this was so, could justify the Garritys' caution in responding to the IRS's new offer. The

---

[7]On the whole, the record is sparse. The IRS asserts that this is because the sheer volume of paperwork associated with the Hillcrest cases precluded the filing of all correspondence with the Tax Court. Nevertheless, we cannot presume the existence of correspondence or other documents that might support the IRS's position, but must proceed on the basis of the record as it stands.

Garritys may have decided to take the new offer "under advisement" in order to ascertain that they had indeed concluded the original 1988 agreement and therefore had no need to consider any new offer.

The Garritys concede that they contemplated signing a Form 906 closing agreement as to so-called affected items and interest. *See* I.R.C. §§ 6231(a)(5), 7121. However, they urge that this had nothing to do with their acceptance of the settlement offer. We agree. Under 26 C.F.R. § 301.7121–1(d)(1) as interpreted by the court in *Haiduk,* once a tax case is docketed in the Tax Court, there is no requirement that a settlement of that case be concluded by way of a section 7121 closing agreement.[8] The Garritys' *partnership* items were the sole subject matter of the Tax Court proceeding, and the Garritys could settle their case with respect to these partnership items without a closing agreement, and without regard to whether a closing agreement was contemplated or completed as to affected items and interest. The Commissioner's argument to the contrary misses the mark. Although 26 C.F.R. § 301.7121–1(d)(1) specifies that all closing agreements shall be on forms prescribed by the IRS, it does not state that all *settlement agreements* shall be on such forms, and *Haiduk* holds that binding settlement agreements may be concluded without closing agreements. Moreover, the Commissioner's cited cases, which support strict construction of section 7121 and its accompanying regulations, all concern putative settlements entered into by lower-level IRS officials who lacked proper authority to settle. *E.g., Botany Worsted Mills v. United States,* 278 U.S. 282, 288–89, 49 S.Ct. 129, 131–32, 73 L.Ed. 379 (1929) (construing predecessor statute to section 7121); *Brooks v. United States,* 833 F.2d 1136, 1146 (4th Cir.1987); *Dorl v. Commissioner,* 507 F.2d 406, 407 (2d Cir.1974). No such concern is implicated here.

The Commissioner attempts to distinguish *Haiduk* on the grounds that the settlement offer in that case did not require the taxpayer to complete a closing agreement, whereas the offer made to

---

[8]We express no opinion as to whether, as the Garritys urge, section 6224(c) provides a statutory source of settlement authority independent of section 7121.

the Garritys did so require. That is by no means clear. At best it is uncertain whether the settlement offer at issue in *Haiduk* contemplated a closing agreement. In any event, the Commissioner has not proved that a closing agreement was required in the instant case. Furthermore, the Commissioner's counsel admitted at oral argument that the Form 906 requirement was imposed primarily for administrative convenience, in order to facilitate the processing of the large number of Hillcrest settlements. Thus the completion of Form 906 cannot have been essential to Garritys' acceptance of the settlement offer. In brief, the contention that the Garritys' February 29, 1988 letter was an acceptance of the terms of the offer, but not of the offer itself, is rejected.

The alleged inability of the IRS to assess the Garritys' tax under the settlement within the one-year statute of limitations period of I.R.C. § 6229(f) does not demonstrate that a settlement was never concluded. Nor does the failure of the IRS to file a record of a settlement with the Tax Court pursuant to Tax Court Rule 248(c) negate the existence of the settlement. At most, these failures suggest that the IRS, burdened with hundreds of Hillcrest cases, was unable to pursue all of them with the required diligence. While we acknowledge that the fisc of the Nation should be protected when proper to do so, protection at the expense of a taxpayer's rights is quite improper.

IV.

CONCLUSION

We hold that the Garritys' acceptance letter of February 29, 1988 concluded a binding settlement agreement between the Garritys and the IRS. Therefore, as of February 11, 1991, the Tax Court no longer had subject matter jurisdiction with respect to the Garritys' partnership items, and thus had no power to order the Garritys to comply with the terms of the FPAA. The Tax Court erred in failing to consider the Garritys' various motions, and we reverse its decision in this regard. On remand, the Tax Court is instructed to vacate its February 11, 1991 order insofar as that order purports to enforce the Treaty Pines FPAA with respect to the Garritys, and to dismiss the case as it pertains to the Garritys for lack of subject matter jurisdiction.

REVERSED AND REMANDED.