United States Court of Appeals,

Fifth Circuit.

No. 96-60322.

ESTATE OF Donald H. RAY, Deceased;  Patricia G. Ray, Independent Executrix, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Cipriano DOMINGUEZ;  Estate of Isabel Dominguez, Petitioners-Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

May 8, 1997.

Appeal of Decisions of the United States Tax Court.

Before JONES, STEWART and DENNIS, Circuit Judges.

STEWART, Circuit Judge:

Taxpayers appeal the tax court's decision that the Commissioner of Internal Revenue Service's (IRS) notices of deficiency were not time-barred.  The IRS assessed deficiencies in income taxes as to appellants' taxable years 1983 and 1984, one year after it executed a settlement agreement with taxpayers.  Taxpayers assert that the one-year statute of limitations was triggered when they signed the settlement agreement, and thus the IRS's assessment was time-barred.  For the following reasons, we affirm.

BACKGROUND

The facts are undisputed.  During the relevant time period, 1983 and 1984 tax years, the taxpayers were partners in RDB Joint

1

Venture ("RDB"), a Texas general partnership. RDB was a partner of Valley Cable, Ltd. ("Valley Cable"), a Texas Limited Partnership. Valley Cable was subject to the unified audit and litigation procedures set forth in §§ 6221 through 6233 of the Tax Code. Taxpayers were "indirect partners" of Valley Cable, as defined in § 6231(a)(10), due to their ownership interest in RDB.

The IRS audited Valley Cable. As a result of its investigation, the IRS issued Valley Cable a Notice of Final Partnership Administrative Adjustment disallowing deductions claimed by Valley Cable for the 1983 and 1984 tax years (which affected taxpayers' income tax for the 1983 and 1984 tax years). RDB challenged this determination. Subsequently, an IRS representative, Mr. Palka, mailed a letter ("Palka letter") and a Form 870-L(AD), settlement agreement to Valley Cable's Partner for tax matters, Mr. Wilder. A copy of the form and letter was sent to RDB. The letter contained several mistakes which were detected by RDB's attorney, Mr. Redding, and this was communicated to the IRS. Form 870-L(AD), however, was correct. It provided in pertinent part:

> Under the provisions of section 6224(c) of the Internal Revenue Code, the undersigned offers to enter into a settlement agreement with respect to the determination of partnership items of the partnership for the year shown on the attached schedule of adjustments. The undersigned, in accordance with the provisions of Section 6224(b) of the Code, also offers to waive the restrictions on the assessment and collection of any deficiency attributable to partnership items (with interest as required by law) provided in Section 62255(a).

> This offer is subject to acceptance for the Commissioner of the Internal Revenue Service. It will take effect as a waiver of restrictions on the date it is accepted. *Unless and until*

*it is accepted, it will have no force of effect.* [Emphasis added.]

Following these instructions were three lines bearing the label "Signature of taxpayer"; below the taxpayers' signature line was a blank space, and at the bottom of the page were lines labeled: "Date accepted for the Commissioner" and "signature."

In an attempt to correct the errant Palka letter, the IRS's attorney for the case, Mr. Balboni, sent a second letter ("Balboni letter").  The letter provides in pertinent part:

> In order to clear up any potential misunderstanding caused by the [Palka] letter in these cases, I am willing to write and send a letter to each of the partners of Valley Cable, Ltd., or their known representative, which clarifies the settlement offer and the deadline for its acceptance....  [T]he settlement offer can only be accepted by you if you ... execute the Form 870-L(AD) ... [and send it] in an envelope postmarked no later than May 6, 1991, which date is the final deadline for accepting the offer....  The settlement agreement between you and the government *will be consummated only upon the execution of the form 870-L(AD) by an authorized representative of the government.*  [Emphasis added.]

After consultation with their CPA, RDB accepted the settlement offer.  Taxpayers' counsel, Mr. Redding, executed Form 870-L(AD) on behalf of RDB and it was delivered to IRS representative Palka on May 6, 1991, the due date.  A cover letter executed by Redding accompanied the Form 870-L(AD).  It provided in pertinent part:

> Pursuant to Mr. Balboni's letter of April 4, 1991, enclosed is an executed Form 870-L(AD) on behalf of the above-referenced taxpayers, accepting the Government's settlement offer....  Please send me a copy of the fully executed 870-L(AD) as soon as it is signed on behalf of the Internal Revenue Service.

The IRS's authorized representative executed the Form 870-L(AD) on December 6, 1991.  Pursuant to the terms of the settlement, the IRS assessed deficiencies in income taxes on

3

December 3, 1992, as to the Rays' taxable years 1983 and 1984 attributable to the settlement of the Valley Cable Partnership audit. The IRS did the same for the Dominguez's on the next day, December 4, 1992.

The taxpayers responded by filing petitions for redetermination of the assessed deficiencies, arguing that the one year statute of limitations period set by § 6229(f) began to run when their representative signed Form 870-L(AD) on May 6, 1991, rather than on December 6, 1991 when an authorized representative of the IRS executed the Form 870-L(AD). Thus, the argument follows that the notices of deficiency mailed by the IRS on December 3-4, 1992, were not mailed within a year of the execution of the agreement on May 6, 1991, and consequently are time-barred.

After a trial, the Tax Court held that the notices of deficiency were not time-barred. The Tax Court correctly observed at the outset that the dispositive issue was "when the parties entered into a settlement agreement." The court noted that contract principles govern the settlement of tax cases. One of those principles is that an unambiguous document should be interpreted within its four corners. The Tax Court rejected the taxpayers' arguments, finding Form 870-L(AD) unambiguous. The Tax Court also concluded that when the Balboni letter and Form 870-L(AD) are read together, it is clear that the settlement was not effective until it was accepted by the IRS.

STANDARD OF REVIEW

"Interpretation of a contract and the determination of

4

ambiguity are questions of law, which this Court reviews de novo."
*F.D.I.C. v. McFarland,* 33 F.3d 532 (5th Cir.1994). When the trial court considers extrinsic evidence in interpreting a contract, its conclusions are reviewed under a clear error standard. *Id.*

## DISCUSSION

In this appeal, we are faced with one question: Whether the settlement agreement reached by the parties was legally binding at its signing by the taxpayers or at the IRS's signing.

At the outset, we note the parties agree that a settlement was entered into and that the IRS had one year from the date it entered into the settlement agreement to assess any tax or penalties resulting from the settlement agreement. The parties disagree, however, as to when the limitations period under 26 U.S.C. § 6229(f) began to run. The taxpayers contend that when they signed and returned the Form 870-L(AD), the parties then had a legally enforceable agreement. The IRS, on the other hand, contends that it was not until its authorized representative signed the Form 870-L(AD) did the parties have a legally enforceable agreement thus triggering the one-year statute of limitations. We must therefore resolve the issue of when did the statute of limitations begin to run.

We have previously held that general contract law principles govern tax settlement cases. *Treaty Pines Investments Partnership v. Commissioner of IR,* 967 F.2d 206, 211 (5th Cir.1992). Moreover, in the context of settlement agreements utilizing the Form 870-L(AD), we have considered the very same argument now asserted by

5

Taxpayers. In *Brookstone Corp. v. United States,* 58 F.3d 637 (5th Cir.1995) (per curiam) (unpublished),[1] we affirmed the district court's determination that a settlement reached between the taxpayer and the IRS was not accepted upon the taxpayer signing the Form 870-L(AD), but only when it was signed by the IRS. The Form 870-L(AD) was accompanied by a transmittal letter that contained language which, if read in isolation, might be interpreted to mean it was an offer subject to acceptance by taxpayers signing it. However, we distinctly held that the operative document was the Form 870-L(AD), which was unequivocal and stated that the settlement agreement would not take effect until signed by the IRS. Thus, we rejected taxpayer's argument and affirmed the district court. *Brookstone,* slip op. at 2.

The facts of *Brookstone* are similar to the facts of the instant case and thus we follow its reasoning. We are not persuaded by the taxpayers' argument that the use of the words "offer" and "accept" in the Balboni letter constituted language of an offer for the taxpayers to accept. If we narrowly interpret the Balboni letter as controlling then we lose sight of Form 870-L(AD)'s relevance as the operative document. Balboni's letter was written as a point of clarification of the Palka letter and to reaffirm the requirements enumerated in Form 870-L(AD), but at no time was this letter to supersede the Form 870-L(AD). Nonetheless, when the documents are read together, it is quite apparent that Form 870-L(AD) is an invitation to offer which requires acceptance

---

[1]Cited at 58 F.3d 637 (5th Cir.1995).

by the Commissioner *prior* to the settlement taking effect. *See*
*Gillilan v. Commissioner,* 66 T.C.M. (CCH) 398, 1993 WL 311552
(1993) (Stating that taxpayers signing of Form 870-L(AD) was an
offer to settle certain partnership items that could not constitute
an agreement until accepted by the IRS).

Taxpayers argue that binding settlement agreements have been
found to consist of exchanges of letters, such as what is present
in the instant case. *See Treaty Pines, supra; Haiduk v.
Commissioner,* 60 T.C.M. (CCH) 864, 1990 WL 136717 (1990).
Taxpayers' argument, however, cannot overcome the presence of the
Form 870-L(AD) and its unambiguous language.[2] Although taxpayers
make an attempt to argue that the Form 870-L(AD) is ambiguous, the
plain language of the form refutes this argument. Part I of the
form (addressing partnership items) notes that "the undersigned
[taxpayer] offers to enter into a settlement agreement" with
respect to partnership items shown on an attached schedule.
Further down on the form it states that "this offer is subject to
acceptance for the Commissioner of the Internal Revenue Service....
Unless and until it is accepted, it will have no force or affect."
As *Brookstone* concluded, this language is unambiguous and therefore
it is controlling. As such, the settlement agreement was entered
into as a matter of law on December 6, 1991, when the IRS accepted
the offer by signing the Form 870-L(AD). Thus, the IRS's
assessments executed on December 3 and 4, 1992 were not

---

[2]Neither *Treaty Pines* nor *Haiduk* were addressing the existence
of a formal settlement document, such as the one [870-L(AD) ]
present here.

time-barred.

## CONCLUSION

Having found that the IRS made a timely assessment of the tax penalties at issue because it was made within one year after the IRS and the taxpayers entered into a settlement, we AFFIRM.