T.C. Memo. 1998-213

UNITED STATES TAX COURT

CINEMA '85, RICHARD M. GREENBERG,
TAX MATTERS PARTNER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 4432-92.                          Filed June 17, 1998.

Thomas E. Redding and Sallie W. Gladney, for participant
William A. Newman.

Joseph F. Long and Gerald A. Thorpe, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

POWELL, Special Trial Judge: This case is before the Court
on participant William A. Newman's (Mr. Newman) motion to dismiss
for lack of jurisdiction. The underlying dispute arises from Mr.
Newman's interest in Cinema '85 (sometimes referred to as the
partnership). The parties agree that for the partnership taxable
years in issue the partnership is subject to the unified audit

and litigation procedures of sections 6221 through 6231[1] enacted by the Tax Equity & Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648. They further agree that a timely petition was filed and, accordingly, this Court has jurisdiction over this case. Mr. Newman, however, argues that he entered into a settlement agreement with respondent which converted his partnership items to nonpartnership items and, with respect to him, ousted this Court's jurisdiction pursuant to sections 6226(d)(1)(A) and 6231(b)(1)(C). The issue is whether Mr. Newman and respondent entered into a binding settlement agreement with respect to adjustments relating to Mr. Newman's investment in the partnership for the 1985 through 1989 partnership taxable years.

## FINDINGS OF FACT

Cinema '85 is one of a number of partnerships formed to purchase and exploit the rights to certain films. The general partners of those partnerships were Richard M. Greenberg and/or A. Frederick Greenberg.[2] Respondent began an examination of the partnership at some point in the mid-1980's as part of a national

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] On its partnership returns for the years in issue, Cinema '85 claimed loss deductions based on the alleged purchase of the films "Salvador" and "At Close Range", and the alleged purchase of an interest in certain distribution rights in the films "Return of the Living Dead" and "Howling II".

project focusing on the various partnerships of the Greenberg Brothers (the Greenberg Brothers project). Richard M. Greenberg, who was then the tax matters partner (TMP) of Cinema '85, retained attorney Peter L. Faber (Mr. Faber) to represent the partners at the partnership level during respondent's examination.[3] Mr. Faber also represented the partners at the partnership level upon filing the petition in this case.

Mr. Newman was a limited partner in Cinema '85 during the partnership taxable years in issue. Mr. Newman has elected to participate in these proceedings pursuant to section 6226(c)(2) and Rule 245(b).

Joseph F. Long (Mr. Long), an attorney in respondent's District Counsel office in Hartford, Connecticut, represented respondent in the settlement negotiations for the Greenberg Brothers project. After Mr. Long was assigned to the project, he and Mr. Faber discussed the possibility of settling the Greenberg Brothers partnership cases by a settlement at the partnership level.

On or about August 6, 1990, Mr. Long wrote to Mr. Faber regarding the Greenberg Brothers project, listing Cinema '85 in the subject portion of the letter. In the letter, Mr. Long

---

[3] Richard M. Greenberg became disqualified from acting as the TMP when an involuntary petition in bankruptcy was filed against him in January 1994. See sec. 6231(c); sec. 301.6231(a)(7)-1(l)(1)(iv), Proced. & Admin. Regs.; sec. 301.6231(c)-7T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987).

expressed respondent's willingness to settle both docketed and nondocketed cases on the basis of an "at risk settlement" under section 465. In closing, the letter stated: "This offer to settle is open until September 28, 1990."

After receiving Mr. Long's letter, Mr. Faber contacted Mr. Long to discuss whether investment tax credits would be allowed under the settlement offer outlined in his letter. In response to this query, Mr. Long followed up with a letter dated November 1, 1990, to Mr. Faber. This letter stated in relevant part:

> By letter dated August 6, 1990, we extended an offer to settle the above mentioned movie partnerships. We offered to settle these cases on the basis of and[sic] I.R.C. [sec.] 465 "at risk" settlement. * * *

> We originally requested that you accept, or reject, the offer to settle by September 28, 1990. * * * Since we were unable to respond to your question within a reasonable time before the September 28, 1990, deadline, we advised you that we would tender a subsequent offer to you which would address the investment tax credit issue.

> The purpose of this letter is to extend a new offer to settle these cases on the basis of an "at risk" settlement under I.R.C. [sec.] 465.

In closing, Mr. Long wrote: "This offer is open for forty-five[sic] days, after the date of this letter." Mr. Faber rejected this settlement offer on behalf of the partners.

On December 2, 1991, respondent issued notices of final partnership administrative adjustment (FPAA's)[4] to the TMP,

---

[4] The FPAA is the notice provided to affected taxpayer-partners of respondent's final administrative adjustment for specific partnership tax years. The FPAA is to the litigation of
(continued...)

determining adjustments to partnership items for the 1985 through 1989 partnership taxable years. On February 28, 1992, the TMP timely filed a petition with this Court on behalf of the partnership for readjustment of the partnership items. At the time the petition in this case was filed, the partnership's principal place of business was located at Greenwich, Connecticut.

After the filing of the petition in this case, Mr. Long again wrote to Mr. Faber on the subject of the Greenberg Brothers project, listing Cinema '85 in the subject portion of the letter. The letter dated September 9, 1992, stated:

> We are offering to settle the above referenced movie tax shelters on the basis of an "at risk" settlement under I.R.C. [sec.] 465. For purposes of the settlement taxpayers are considered at risk to the extent of their initial cash investment in the movie, with no amounts allowed for notes executed by the partnership, or the assumption agreement executed by the partners. After the cash is used up the amount at risk is zero. However, to the extent the partnership earns net income in later years, the amount at risk will be increased in accordance with I.R.C. [sec.] 465.
>
> For the purposes of settlement the respondent will concede all additions to tax, but respondent will not concede additional interest under I.R.C. [sec.] 6621(c).
>
> You have thirty days to accept this settlement offer. After said date it is withdrawn.

---

[4](...continued)
partnership items the equivalent of the statutory notice of deficiency in other cases. Sirrine Bldg. No. 1 v. Commissioner, T.C. Memo. 1995-185, affd. without published opinion 117 F.3d 1417 (5th Cir. 1997).

The settlement offer made to Mr. Faber was intended as an offer to settle at the partnership level and was not intended to be made to the individual partners. Mr. Faber was of the opinion that during this time there were continuing settlement negotiations going on that may have produced better terms. Shortly thereafter, Mr. Faber withdrew as counsel of record.

In late 1992, George J. Noumair (Mr. Noumair) began settlement discussions with Mr. Long on behalf of partners who wanted to settle. Pursuant to inquiries from Mr. Noumair concerning settlement, Mr. Long wrote to Mr. Noumair on April 22, 1993, with regard to Cinema '85. The letter stated:

> A number of the limited partners have contacted the respondent and indicated their interest in accepting respondent's settlement offer. We are, therefore, going to have the Service Center make the settlement offer directly to the limited partners, so that those interested in settling can close out their interest in this partnership.

In the course of ongoing discussions with Mr. Long, Mr. Noumair indicated that he would survey the partners in order to ascertain who desired to settle. On June 24, 1993, Mr. Noumair sent a memorandum to the limited partners of Cinema '85 in which he stated: "If you wish to 'opt out' and settle individually at this time, please advise us * * *. We will then arrange for the appropriate documents to be sent to you."

In a letter dated September 30, 1993, Mr. Newman wrote to Lee Peretzman at the Greenberg Brothers Partnerships office in New York City expressing his willingness to settle with

respondent and asking what further steps would be necessary to effect a settlement.

By letter dated November 30, 1993, Mr. Noumair wrote to Mr. Long with regard to partners in Cinema '85 and seven other Greenberg Brothers partnerships who desired "to accept the IRS settlement offer and opt out of the TEFRA proceeding". The letter also stated: "I would appreciate it if, with respect to the partners who wish to opt out, you would send to me the documents you will require to be executed for filing in the Tax Court." Attached to the letter was a separate list for each partnership, indicating the names and interests of the partners wishing to opt out of the TEFRA proceeding; Mr. Newman is listed on an attachment titled "Limited Partners in Cinema '85 Limited Partnership Who Want to Opt Out and Settle as of 11/30/93". According to Mr. Long, at that time, settlement would be "achieved" by signing a Form 870 or entering into a closing agreement. Mr. Faber also had understood "that there would be some documents that would have to be executed to implement * * * [a settlement]."

On February 1, 1994, Mr. Newman wrote to the Internal Revenue Service (IRS) in Holtsville, New York, stating:

> I am one of the limited partners who has opted to accept the Internal Revenue Service's settlement offer.
>
> I wish to make an immediate remittance to the Internal Revenue Service of the settlement amount. * * * Enclosed is my check in the amount of $43,500. * * * [T]he enclosed

remittance is hereby stated to be a deposit in the nature of a cash bond.

By letter dated March 21, 1994, Carol M. Landy, Director of the Internal Revenue Service Center in Holtsville, wrote to acknowledge receipt of Mr. Newman's payment "as a cash bond for payment of an amount that may be assessed later".

Prompted by an order of this Court dated June 29, 1994,[5] Mr. Newman wrote a letter dated July 14, 1994, to Maurice S. Stein of the IRS Appeals Office in New York City. The letter stated in pertinent part:

> As you can see from the attached correspondence dated February 1, 1994 with the Service, I have elected to accept the Settlement offered by the Service to the limited partners and have deposited the sum of $43,500 with the Service.
>
> Please (i) confirm to me that your records show that I have accepted the settlement and (ii) advise me what further steps I should take with respect to the settlement position that is referred to in the Order.

On August 31, 1994, the IRS Regional Director of Appeals forwarded a settlement package to Mr. Newman. The enclosures set forth respondent's settlement position and invited Mr. Newman to submit an offer by completing an enclosed Form 870-P(AD) within 30 days of the date of the letter. The letter also stated that questions could be directed to the IRS contact person Pamela Stueber at the Holtsville Internal Revenue Service Center. By

---

[5] On June 29, 1994, this Court issued an order requiring that all partners in Cinema '85 appear at a pretrial hearing in New York set for September 22, 1994, unless a basis of settlement had been reached with respondent.

letter dated September 19, 1994, Mr. Newman wrote to Pamela Stueber regarding the settlement package inquiring "why a further signing is required".  Mr. Newman did not sign and return the Form 870-P(AD) by the deadline set forth in the August 31, 1994, letter.

OPINION

The Tax Court is a Court of limited jurisdiction and may exercise jurisdiction only to the extent expressly permitted by statute.  See sec. 7442; Trost v. Commissioner, 95 T.C. 560, 565 (1990).  We have jurisdiction to decide whether we have jurisdiction.  Pyo v. Commissioner, 83 T.C. 626, 632 (1984). Section 6226(f) vests this Court with subject matter jurisdiction to determine all partnership items of the partnership for the partnership taxable year to which the FPAA relates and the proper allocation of such items among the partners.[6]  This Court's jurisdiction over a partnership action is predicated upon the mailing of a valid FPAA by the Commissioner to the TMP and the timely filing by the TMP or other eligible partner of a petition seeking a readjustment of partnership items.  Rule 240(c);

---

[6]     Partnership items include each partner's proportionate share of the partnership's aggregate items of income, gain, loss, deduction, or credit.  Sec. 6231(a)(3); sec. 301.6231(a)(3)-1(a)(1)(i), Proced. & Admin. Regs.  Nonpartnership items are items that are not partnership items.  Sec. 6231(a)(4).  An affected item is any item to the extent such item is affected by a partnership item.  Sec. 6231(a)(5); sec. 301.6231(a)(5)-1T(a), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6790 (Mar. 5, 1987).  Some affected items are subject to the deficiency procedures contained in secs. 6211 through 6215.

Seneca, Ltd. v. Commissioner, 92 T.C. 363, 365 (1989), affd. without published opinion 899 F.2d 1225 (9th Cir. 1990).  Neither Mr. Newman nor respondent disputes that the FPAA's were valid and that the petition was timely filed in this case.

Pursuant to the TEFRA provisions the tax treatment of partnership items generally is to be determined at the partnership level.  See Maxwell v. Commissioner, 87 T.C. 783, 788 (1986).  Section 6226(c)(1) provides that if a partnership action is brought under either section 6226(a) or (b) each person who was a partner in such partnership at any time during the year in issue shall be treated as a party to such action.  However, section 6226(d)(1)(A) provides, in pertinent part, that section 6226(c) shall not apply to a partner "after the day" on which the partnership items of such partner for the particular partnership taxable year become nonpartnership items by reason of one of the events described in section 6231(b).  A settlement agreement between the Secretary and a partner is among the events causing the conversion of partnership items into nonpartnership items. Sec. 6231(b)(1)(C).  Section 6224(c) provides that in the absence of a showing of fraud, malfeasance, or misrepresentation of fact, a settlement agreement between the Secretary and a partner with respect to the determination of partnership items for any partnership taxable year shall be binding on all parties to such agreement.

Whether, with respect to Mr. Newman, we have jurisdiction over his partnership items depends upon whether he entered into a binding settlement agreement with respondent.  Underlying that question is whether the period of limitations for making an assessment may have run.

Settlement Agreements in TEFRA Proceedings

General principles of contract law govern the settlement of tax cases.  <u>Dorchester Indus. Inc. v. Commissioner</u>, 108 T.C. 320, 329-330 (1997).  A prerequisite to the formation of a contract is an objective manifestation of mutual assent to its essential terms.  <u>Manko v. Commissioner</u>, T.C. Memo. 1995-10.  Mutual assent generally requires an offer and an acceptance.  <u>Id.</u>  "'An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" <u>Dorchester Indus. Inc. v. Commissioner</u>, <u>supra</u> at 330 (quoting 1 Restatement, Contracts 2d, sec. 24 (1981)).  Settlement offers made and accepted by letters are enforced as binding agreements. <u>Dorchester Indus. Inc. v. Commissioner</u>, <u>supra</u> at 330-333; <u>Haiduk v. Commissioner</u>, T.C. Memo. 1990-506.

Respondent argues that only a properly executed Form 870-P or a closing agreement (Form 906) constitutes a settlement agreement for purposes of sections 6224(c) and 6231(b)(1)(C).[7]

---

[7]      Neither the Code nor respondent's regulations defines
(continued...)

Without the requirement of a formal written agreement, respondent anticipates confusion and judicial inefficiency: disputes will arise over whether there was a settlement and will necessitate judicial review as to whether there was a settlement and the terms thereof. Since respondent and Mr. Newman have not executed either form, respondent contends that they have not entered into a settlement agreement.

While respondent's position may have the advantages that respondent attributes to it, we believe that it is unnecessary to decide that issue in the circumstances presented here. Where settlement is conditioned upon the execution of respondent's forms, the execution of such forms controls resolution of whether a settlement agreement was in fact made. See, e.g., Estate of Ray v. Commissioner, T.C. Memo. 1995-561, affd. 112 F.3d 194 (5th Cir. 1997); see also Brookstone Corp. v. United States, 74 AFTR 2d 94-6025, 94-2 USTC par. 50,474 (S.D. Tex. 1994), affd. per curiam without published opinion 58 F.3d 637 (5th Cir. 1995). We turn to the question whether the settlement here was so conditioned.

---

[7](...continued)
what constitutes a "settlement agreement" for purposes of secs. 6224(c) and 6231(b)(1)(C). A closing agreement (Form 906), statutorily authorized by secs. 7121 and 7122 has been used to settle TEFRA cases. See, e.g., Pack v. United States, 992 F.2d 955, 956 (9th Cir. 1993); Monge v. United States, 27 Fed. Cl. 720, 722 n.3 (1993). In addition, we have held that a Form 870-P qualifies as a settlement agreement under sec. 6224(c). Korff v. Commissioner, T.C. Memo. 1993-33.

Mr. Newman was never involved directly in the settlement negotiations. Those negotiations were done by Messrs. Long, Faber, and Noumair. Mr. Long testified that he intended that in order to consummate any settlement with the partners, a Form 870 and/or a closing agreement would be executed by the partner or the partner's representative. This was consistent with Mr. Faber's understanding when he was involved with the case that further documents would have to be executed. The only other person with direct knowledge of what happened during this time was Mr. Noumair, and he did not testify. We have no reason to believe, however, that his testimony would have been different and, indeed, his June 24, 1993, memorandum to the limited partners and his November 30, 1993, letter to Mr. Long recognized that further documents were required. Although there may have been a general understanding of the terms of the settlement, to effectuate the settlement it was understood that the partner would execute either a Form 870 or a closing agreement.

Furthermore, all the parties understood that the settlement terms were not limited to the Greenberg Brothers cases that were currently before the Court. It also included issues involving the additions to tax that are affected items and the applicable interest, issues that were not before the Court. Moreover, the settlement terms dealt with the tax effects of the Greenberg Brothers partnerships in future years. At that time, Mr. Long was of the opinion that either a closing agreement or a Form 870

was necessary to effect a settlement of a partner's various liabilities.[8]

Mr. Newman may have attempted to accept an offer from respondent to settle the case. It is clear, however, that all the parties directly connected with the settlement negotiations understood that to effectuate the settlement either a closing agreement or a Form 870 had to be executed. It is also clear that, although the forms were sent to Mr. Newman, he never executed them, and, consequently, there was no settlement of his case.[9]

To reflect the foregoing,

> An appropriate order will
> be issued denying Mr. Newman's
> motion to dismiss for lack of
> jurisdiction.

---

[8] Whether this opinion was correct or not is beside the point.

[9] We leave for a subsequent opinion the question whether Mr. Newman may be entitled to consistent settlement terms pursuant to sec. 6224(c)(2) and sec. 301.6224(c)-3T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6787 (Mar. 5, 1987).