**M. Russell GREGORY and Kay K. Gregory, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

No. Civ.A. H–98–3565.

United States District Court, S.D. Texas, Houston Division.

June 22, 2000.

Walter B. Thurmond, Allie and Thurmond, Houston, TX, Charles B. Koerth, Houston, TX, for M. Russell Gregory, plaintiff.

Cynthia A. Vance, Department of Justice, Tax Division, Dallas, TX, for United States of America, defendant.

## MEMORANDUM AND OPINION

ROSENTHAL, District Judge.

In this tax refund suit, plaintiffs, M. Russell Gregory and Kay K. Gregory, allege that the Internal Revenue Service unlawfully assessed and collected taxes for partnership liabilities after the statute of limitations for making the assessments had expired. The parties have filed cross-motions for summary judgment on the issue of whether the Internal Revenue Service timely assessed the taxes at issue. (Docket Entry Nos. 10 & 14). Based on the motions, the pleadings, the record, and the applicable law, this court GRANTS the United States' motion for summary judgment and DENIES the Gregory's cross-motion. The reasons are stated below.

## I. Factual and Procedural Background

Plaintiffs were partners in two of a series of partnerships known as the Greenberg Brothers Partnerships. The two partnerships at issue, Easy Money Association and Cinema '84 (the "partnerships"), were engaged in purchasing, owning, and distributing certain movies, including "Easy Money," "Return of the Living Dead," "Terminator," "The Howling," and "A Breed Apart." From tax years 1984 through 1987, the Gregorys timely filed their federal income tax returns, including their share of losses arising from the partnership interests. In 1991, following audits of the Gregorys' returns and the partnership returns, the IRS sent Notices of Final Partnership Administrative Adjustment to the Gregorys and other partners. The notices proposed adjustments to the partnerships' returns for tax years 1984 through 1987. The proposed adjustments included additional tax assessments against the Gregorys arising from their partnership liabilities. In response, the partnerships' tax matters partner, Richard M. Greenberg, filed Petitions for Readjustment of Partnership Items in the United States Tax Court.

While the petitions were pending in the Tax Court, settlement negotiations began between Joseph Long, an attorney representing the IRS, and George J. Noumair, counsel for the partnerships. On November 30, 1993, Noumair sent a letter to the IRS on behalf of the Gregorys and other interested partners. In that letter, Noumair stated as follows:

> We are writing with regard to the settlements reached in two of the 10 cases last April and with regard to the partners in the other 8 partnerships listed below who desire to accept the IRS settlement

offer and opt out of the TEFRA proceeding relating to such partnerships.

. . . . .

Cinema '84 Limited Partnership

. . . .

Easy Money Associates

As to these 8 partnerships, there is attached hereto a separate list for each partnership, indicating the names and interests of the partners who wish to opt out of the TEFRA proceeding. I would appreciate it if, with respect to the partners who wish to opt out, you would send to me the documents you will require to be executed for filing in the Tax Court.

(Docket Entry No. 12, Ex. A).

The letter continued by informing the IRS that several of the partners had already made advanced payments to the IRS and were concerned about receiving full credit for those payments. The letter stated that it would be "very important to calculate the additional income or deduction for each of the years pending in each TEFRA case allocable to each of the taxpayers." (*Id.*) The letter stated that the notices sent earlier in the year incorrectly stated the individual partners' tax deficiencies and interest and that Noumair did not know what amounts the individual partners might be required to pay.

The IRS did not respond to this letter for nearly one year. On November 15, 1994, the IRS sent two letters to the Gregorys, one relating to the Cinema '84 partnership and one relating to the Easy Money Association partnership. Each letter began by stating: "[t]he purpose of this letter is to give [the Gregorys] the opportunity to settle [their] individual partnership liabilities." (Docket Entry No. 12, Exs. B & C).

The letters continued:

In order to accept the IRS settlement offer you must properly execute and return the enclosed closing agreement without modification on or before *January 15, 1995.* Please note that this settlement is subject to review and acceptance by the IRS. Your partnership liabilities are *not* settled until both you and the IRS properly execute the enclosed closing agreement.

If the IRS accepts and executes the enclosed closing agreement, a copy will be returned to you for your records. At this point, you will know your partnership liabilities have been settled, and you will not be effected by the outcome of the partnership proceedings. . . .

If your case is settled, the IRS will calculate your tax liabilities for the loss years. (*Id.*).

The letters concluded with instructions on the execution of the closing agreements. One closing agreement was attached to each letter and set out the terms of the settlement agreement in detail. Each closing agreement specifically stated that it "supersede[d] any prior agreement entered into between the taxpayers and the Internal Revenue Service." (*Id.*). Each closing agreement specifically stated that it constituted "a settlement within the meaning of I.R.C. § 6624(c) and the taxpayers partnership items are converted to nonpartnership items effective as of the date . . . this closing agreement is accepted on behalf of the Commissioner. The taxpayers waive the restrictions on assessment and collection of any deficiencies with interest . . . that results from this agreement." (*Id.*).

The Gregorys signed both closing agreements on January 9, 1995 and returned them to Joseph Long, counsel for the IRS, with a cover letter from Charles Koerth, their attorney. (Docket Entry No. 12, Ex. D). In the cover letter, Koerth stated that although the Gregorys had signed the closing agreements without modification, it "continue[d] to be [the Gregory's] position that the closing agreements [did] not reflect the terms of the settlement offer previously accepted by the [Gregorys]." (*Id.*). Koerth informed the IRS that the Gregorys were not waiving the defense that the

one-year statute of limitations set out in section 6229(f) had expired.

On March 9, 1995, Long replied to Koerth's letter, making it very clear that the IRS would "not consider accepting the closing agreements unless [Koerth] sen[t] [the IRS] written authorization for [the IRS] to disregard the cover letters for [the Gregorys], (i.e., agree[d] to waive any statute of limitations defense)." (Docket Entry No. 12, Ex. E). Long explicitly told the Gregorys that their "partnership liabilities [were] *not* settled until both the taxpayers and the IRS properly execute[d] the closing agreements." (*Id.*).

Koerth replied to Long's letter on April 6, 1995. In the reply, Koerth gave the IRS authority, on behalf of the Gregorys and other listed partners, to disregard the cover letter that had accompanied the closing agreements. (Docket Entry No. 12, Ex. F). Koerth asked the IRS to expedite the return of the countersigned copies of the closing agreements. (*Id.*). On August 21, 1995, the IRS signed the closing agreements and returned them to the Gregorys. (Docket Entry No. 12, Exs. G & H).

On February 2, 1995, the Gregorys paid the IRS cash bonds in amounts totaling $124,378.00. On June 2, 1996, the IRS assessed additional tax and interest liabilities against the Gregorys for the their partnership liabilities for the 1984 tax year. On July 2, 1996, the IRS assessed additional partnership tax liabilities for the 1985 and 1986 tax years, and on August 20, 1996, the IRS assessed additional liabilities for the 1987 income tax year. In August 1996, the Gregorys filed a claim for refund seeking the recovery of the cash bonds, which the IRS rejected.

In this lawsuit, the Gregorys allege that the IRS assessments of tax and interest against them are void because the statute of limitations had expired. The Gregorys rely upon section 6224(c)(1), under which the IRS has one year after a binding settlement agreement resolving disputed partnership items to assess any tax due under the settlement agreement. The Gregorys assert that the November 30, 1993 letter from Noumair was a binding settlement agreement, making the assessments untimely. The IRS moved for summary judgment, asserting that the assessments were timely made. The IRS contends that the only binding settlement agreements were reached on August 21, 1995, the date an IRS representative countersigned the closing agreements. The Gregorys filed a cross-motion for summary judgment, asserting that the November 30, 1993 letter was a binding settlement agreement for the tax liabilities at issue.

Both sides agree that the facts are undisputed. The issue is whether, given the undisputed facts and the applicable law, the IRS assessed the taxes for tax years 1984 through 1987 within one year after the parties reached a binding settlement agreement.

## II. The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED.R.CIV.P. 56. In deciding a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## III. Analysis

Under the Tax Equity and Fiscal Responsibility Act ("TEFRA"), 26 U.S.C.

§§ 6221–6233, the Gregorys' liabilities involving the two Greenberg Brothers Partnerships at issue were appropriately resolved at the partnership level. *See Maxwell v. Commissioner*, 87 T.C. 783, 787–88, 1986 WL 22033 (1986). Under TEFRA, a settlement between the IRS and one or more partners in a partnership with respect to the treatment of partnership items is binding on all parties to the agreement. *See* 26 U.S.C. § 6224(c)(1). When the IRS enters into a settlement agreement with any partner with respect to the treatment of a partnership item, the IRS must "offer to any other partner who so requests settlement terms for the partnership taxable year which are consistent with those contained in such settlement agreement." 26 U.S.C. § 6224(c)(2). On the date that a binding settlement agreement is reached, partnership items are converted to non-partnership items. *See* 26 U.S.C. § 6231(b)(1)(C). The IRS has one year from that date to assess taxes attributable to the treatment of the converted and affected items. *See* 26 U.S.C. § 6229(f).

The government asserts that the date it countersigned the closing agreements, August 21, 1995, is the date on which it reached a binding settlement agreement with the Gregorys. If the government is correct, the partnership items were converted to nonpartnership items on August 21, 1995, the one year state of limitations began to run on that date, and the IRS made the June 2, 1996, July 2, 1996, and August 20, 1996 assessments within the one-year period established by section 6229(f). If the Gregorys are correct that a binding settlement agreement was reached on November 30, 1993, the date Noumair sent an "acceptance letter" on behalf of many of the partners, the assessments are untimely.

 Settlements agreements in tax cases are governed by general principles of contract law. *See Robbins Tire & Rubber Co. v. Commissioner*, 52 T.C. 420, 435–36, 1969 WL 1677 (1969); *Treaty Pines Investments Partnership v. Commissioner*, 967 F.2d 206 (5th Cir.1992); *United States v. Lane*, 303 F.2d 1, 4 (5th Cir. 1962). A contract is a set of promises requiring an objective manifestation of mutual assent by the parties, generally in the form of an offer and an acceptance. *See Cinema '85, Richard Greenberg, Tax Matters Partner v. Commissioner*, 75 T.C.M. (CCH) 2477 (1998). In *Treaty Pines*, the court found a binding settlement agreement between the IRS and the taxpayer in the letters of offer and acceptance the parties exchanged on the basis that nothing in the letters contemplated the execution of further, formal documents. 967 F.2d at 211 (citing *Haiduk v. Commissioner*, 60 T.C.M. (CCH) 864 (1990)) (finding that a binding settlement agreement was evidenced by correspondence between the parties despite the parties' failure to execute formal settlement documents).

 The undisputed facts disclosed in this record require this court to hold, as a matter of law, that the November 30, 1993 Noumair letter did not create a binding settlement agreement. In their motion, plaintiffs maintain that their November 30, 1993 letter accepted a settlement offer the IRS had made "either orally or by letter." (Docket Entry No. 11). However, the record discloses no evidence of prior settlement offers from the IRS. The acceptance letter is insufficient evidence that the IRS had promulgated an offer that the Gregorys accepted in the November 30, 1993 letter, so as to create a binding agreement. Moreover, the letter does not provide any information as to the terms of the purported agreement necessary to support a characterization as a binding settlement agreement. The law is clear that a binding agreement must be sufficiently definite to permit a court to determine the legal obligations and liabilities of the parties. *See South Hampton Co. v. Stinnes Corp.*, 733 F.2d 1108, 1122 (5th Cir.1984) (citing *Moore v. Dilworth*, 142 Tex. 538, 179 S.W.2d 940, 942 (1944)). Additionally, the

Noumair letter, by its terms, contemplates the execution of formal closing papers, contradicting the argument that the parties intended to reach a binding settlement agreement through the letter alone.

These factors distinguish this case from cases in which the courts have found a binding agreement in the exchange of letters of offer and acceptance, without the need for the execution of formal closing agreements or IRS forms. In *Treaty Pines,* the Fifth Circuit held that a taxpayer's letter accepting an IRS offer created a binding contract that was not invalidated by the taxpayers' later failure to execute a Form 906 closing agreement. 967 F.2d 206, 211 (5th Cir.1992). In *Treaty Pines,* it was undisputed that the IRS had made a settlement offer to the taxpayer. The taxpayer sent the IRS a letter accepting the IRS's offer; the IRS confirmed the acceptance in writing, although much later. *See id.* The court found that the settlement offer that the taxpayer accepted did not require the parties to execute formal closing documents to reach a binding agreement. *See id.* at 211–12. Nothing in the terms of the IRS's offer required the taxpayers to complete a specific form to make the settlement effective. *See id.* at 212.

In this case, by contrast, the record does not demonstrate that the IRS made an offer to the Gregorys, which they accepted on November 30, 1993; with sufficiently definite terms so as to create a binding agreement; that did not contemplate executing further documents. The undisputed facts do not support a finding that, as a matter of law, the Gregorys accepted a settlement offer from the IRS on November 30, 1993, so as to create a binding settlement agreement on that date.

 The undisputed facts also lead this court to find that the Gregorys did enter into a binding settlement agreement with the IRS on August 21, 1995. The IRS had extended a settlement offer to the Gregorys by two letters dated November 15, 1994. (Docket Entry No. 12, Exs. B & C). In these letters, the IRS stated

its purpose as giving the Gregorys "the opportunity to settle [their] individual partnership liabilities." The written offers required the Gregorys to "execute and return the closing agreement[s] without modification." The letters also stated that the IRS must accept and execute the closing agreements before any agreement would be reached. When the parties clearly intend that specific additional documents be signed before a binding agreement results, the courts will give effect to that intention. *See Estate of Ray v. Commissioner,* 112 F.3d 194 (5th Cir.1997) (holding that the execution of a Form 870–L(AD) by both the taxpayer and by the IRS was a condition precedent to the existence of the settlement, as stated unequivocally in the IRS's offer).

The closing agreements the Gregorys signed included an express waiver of all restrictions on the assessment and collection of any deficiency attributable to the partnership items at issue. The closing agreements also stated that they superseded all prior agreements. The closing agreements also specifically provided that they would not become effective until countersigned by the IRS, on which date the partnership items would be converted to nonpartnership items, triggering the one-year statute of limitations. Despite these clear provisions, when the Gregorys executed and returned the closing agreements to the IRS on January 10, 1995, they initially attempted to preserve their ability to raise the statute of limitations defense. (Docket Entry No. 12, Ex. D). The IRS rejected this attempt, which was, in effect, a counteroffer. In a letter dated April 6, 1995, the Gregorys expressly authorized the IRS to disregard the contents of the earlier letter and withdrew the attempt to modify the clear provisions of the closing agreements they had already signed. (Docket Entry No. 12, Ex. F). A representative of the Commissioner countersigned the closing agreements on August 21, 1995. (Docket Entry No. 12, Exs. G & H). The parties reached an agree-

ment on that date. The partnership items converted to nonpartnership items under 26 U.S.C. § 6231(b)(1)(C). The one-year statute of limitations began to run. *See* 26 U.S.C. § 6229(f). The IRS assessments in June, July, and August 20, 1996, were timely.[1]

## IV. Conclusion

This court GRANTS the United States' motion for summary judgment and DENIES the Gregorys' cross motion for summary judgment. A final judgment will be entered by separate order.

---

1. This result is consistent with the results reached in three Tax Court cases involving Greenberg Brothers Partnerships and partners also listed on the November 30, 1993 letter from Noumair. In those cases, the courts rejected the taxpayers' attempt to characterize the November 30, 1993 letter as an acceptance that created a binding settlement agreement. *See Cinema '85 v. Commissioner,* 75 T.C.M. (CCH) 2477 (1998); *Greenberg Brothers Partnership # 12 v. Commissioner,* 75 T.C.M. (CCH) 2390 (1998); *First Blood Associates v. Commissioner,* 75 T.C.M. (CCH) 2565 (1998).